Cordua Restaurants, Inc. v. National Labor Relations Board Thank you, Your Honor. May it please the Court, Daniel Ramirez, on behalf of the My client. Your Honor, there's three issues that I will primarily focus on today. However, before I address those three matters, there's an underlying issue that is very relevant, and that's Ramirez's credibility or lack thereof. The record will show that this Court should not agree with the ALJ's credibility choices she gave Ramirez because during the evidentiary hearing, he perjured himself not just once but twice and admitted under oath that he lied to my client in an attempt to sabotage their investigation into a critical issue related to his employment misconduct. This Court must generally give deference to the credibility choices given by the ALJ unless the Court finds that the ALJ's choice was unreasonable, contradicts other findings of fact, was based on inadequate reasons, or the ALJ failed to justify her choice. In this case, all four of these reasons are satisfied by Ramirez's perjury and untruthfulness. As such, the ALJ's credibility choices given to him, Mr. Ramirez, should be overruled by this Court. Your Honors, now I'll move on to my three main legal arguments. But that's a strong start, and it's certainly what you said in the brief, but to label him a perjurer so that he wouldn't, one wouldn't be able to validate his credibility, that's sort of begging the question because the ALJ and then the Board made a finding that in fact it was a sham investigation and that the label perjury wasn't a setup, it was a sham. So they don't accept that at multiple levels. Well, Your Honor, I think if I understand the question, let me refocus the issue, is at the ALJ evidentiary hearing, he admitted under oath that he lied to my client as part of employment investigation. That's issue one. But separate from that confirmation from Ramirez that he lied to my client as part of the investigation, it's Cordua's position that we understand the Board said that that's a sham investigation, but we didn't have the benefit of his truthful statement or untruthful statement that we acquired at the evidentiary hearing, which just confirms that my client's conclusion, and at least one of the basis is to terminate him was untruthfulness, was correct. But in addition, Your Honor, to answer your question further, we're not just relying upon the fact that Mr. Ramirez affirmed that he lied to us during the investigation. He perjured himself on two separate occasions during the ALJ hearing on its own, separate from his employment with my client. But the material lie is that he denied that he was trying to access other people's personal records, and that was fleshed out in the hearing extensively. You've the Reichman text that implied that he did, but then his text to her don't suggest that. He testifies that that wasn't what he wanted. He gets credited, and yet he's fired for having done that. And when you add on to that, I think the transcript's unmistakable that your clients wouldn't let him get an attorney. He kept asking for one, said he put his story in writing with and it's undisputed that there was the access of Reichman's phone with a password. All of that could go to show that there was animus and that there's substantial evidence to support a finding of animus. Your Honor, let me just focus on the record, which is 1195 through 1197, where specifically he testified under oath that he was not truthful to my client as part of that court. Unless there's corroboration from someone who's perjured themselves and lied, then there needs to be other additional evidence to support that. Going to the text message from Reichman, that's the only independent evidence that my client relied upon, which it has a right to. The board is applying a court standard in relation to our investigation and a truth-telling standard as if this is a criminal case. This is an at-will employer situation where we don't have benefit of him being under oath and we don't have the benefit of written discovery and litigation. We have to take it step by step to make our own conclusion about whether he was untruthful. Your Honor, in the ALJ evidentiary hearing, separate from everything else that you mentioned, he states that he was not truthful to Mr. Espinoza, the person who questioned him during the investigation. That was a lie that he confirmed that occurred during his employment. In addition, that lie under oath also was his first act of perjury because when the board asked him that question specifically at Record of Appeal 115, did you answer the questions related to Cordua's investigation truthfully? Mr. Ramirez said yes. It wasn't until we had documentary evidence to cross-examine him where he admitted under oath that he lied about that prior testimony. Not only did he confirm that he lied to us as an employee, he confirmed he perjured himself at the hearing. In addition to that, Your Honor, as far as the second act of perjury, he also attempted to inject animus and alleged that Mr. Espinoza, the person that interviewed him on two occasions, allegedly asked him who else is part of this investigation. As we know, in this type of board and overtime lawsuit, that type of interrogation question is illegal. If that testimony would have stood, it would have been enough for the board to find animus against us. Luckily enough, my client recorded those two interviews with Ramirez to demonstrate that that allegation was merely an attempt to inject animus that never occurred. The pattern here, Your Honor, is he's a liar. He lied to us when he was an employee and it's confirmed by the ALJ evidentiary record. He can't get out of it. In addition, that lie that is also perjury number one and then perjury number two is when he tried to inject allegations that never occurred. Luckily, my client had had a recording to disprove what he was trying to inject into the record. I mean, your brief is calling him a liar many times. Obviously, the ALJ wasn't convinced and instead saw that this was a sham investigation. Could you speak to the issues, the facts that apparently he was refused an attorney several times and whether or not an inference can be drawn against your client from having used the password to get in Reitman's phone? Okay, on issue number one, it's a cordial position that it's not a legal requirement to provide an at-will employee in a non-union setting to provide him an attorney. This has arrived allegations of misconduct and that's what occurred here and we know that just as we use the word liar, the board loves to use sham investigation and they hold us to a Fortune 100 company. We're a local restaurant in Houston, Texas that was reasonable in relation to investigating this investigation, investigating the allegations of Ramirez but there's no requirement, your honor, to provide him an attorney during that investigation and candidly in Texas, that's not the normal protocol in these types of situations because a variety of reasons. From a practical point, an employer wants to find out what does he have to say now, would he even, and candidly, if he had an attorney, his attorney who I know, which is not the board attorney, the litigation attorney, would not have allowed him to talk to us so we have a right to investigate. Your honor, may you ask the second part of the question that you asked again? Well, it's the Hendricks footnote that sort of snooping surveillance techniques, those anonymous can be drawn, an inference of animus can be drawn from the facts here. Well, that's the board's position. I would agree with that but Cordua disagrees with it. If we take a step back and look what happened, we have a general manager of a store with an assistant manager who had prior access and knew the password of Naomi Reichman's cell phone, we're talking about. Another piece that we have to understand is that Ms. Reichman was a supervisor so the act does not apply to her. So the mere fact that Mr. Ambroa accessed her phone is not surveillance, it's not interrogation. He simply had curiosity because a text that popped up on her cell phone included his name, and beyond that, he testified that he from what I understand does not conclude that that's interrogation or surveillance because it's not in any way preventing, at least in this situation, Ramirez or any other person from engaging in concerted or protected activity. He was simply looking at her text messages. I would agree that's what the board's argument is, but we wholeheartedly disagree on that point, Your Honor. If I may continue? Yeah, of course. Your Honor, the first issue I want to focus on is animus, and the majority of the board's argument relies upon Ramirez's testimony, and I think it's very important to focus in not so much on the text message and the allegations of a sham affidavit or anything else but wholly focusing on his testimony. It's clear he perjured himself and he lied, and there's no way of getting around that. So that said, the board has made it clear that the testimony of a perjurer is inherently unreliable and absent corroboration should not be the basis for finding a violation of the act. Additionally, it's contradictory for the board to rely on Ramirez's testimony to establish animus on the one hand and then dismiss his testimony and say he misspoke when he lied about my client asking him questions related to the diminishes the court's deference to it, and that evidence does not constitute substantial evidence even under deferential review. Your Honor, what the board doesn't want to talk about is it's unreasonable and there's inadequate reasoning for failing to credit Mr. Fred Espinosa's testimony, the COO of my client and the person who decided to terminate Ramirez, and for failing to credit the text message my client received alerting them that Ramirez was surreptitiously trying to acquire employment records of other employees without their consent, and putting those on a flash drive. You know what the last point on animus, Your Honors, the court has stated that the strongest form of circumstantial evidence to establish animus is to demonstrate the close proximity in time between someone's protected activity and employee discipline. Excuse me, the record in this case showed there's an eight-month gap that occurred from Ramirez's activity of filing a lawsuit in January and then getting terminated in September. That eight-month gap... Now on to my second point. Well, before you get on to that, I mean you say eight-month gap from lawsuit to termination, but in fact the record's pretty clear that others, he's talking to others and others are joining the lawsuit as far as as late as September. Would you say those aren't protected activities? That's exactly right, Your Honor. So the record does show that he testified that he allegedly was talking to other employees and allegedly encouraging them to join. That's protected activity that we had no knowledge about. In fact, there's testimony that he did this in the parking lot behind some trash cans. In order for someone to be protected technically under protected activity, generally speaking, that employer needs to know that that employee engaged in protected activity. There's no evidence in the record that we ever even knew he was talking to employees and number two, that he was encouraging. In fact, I think there's evidence in the record to the to the opposite end. We transferred him during that year period, plus or minus, to two or three different locations. I thought that there was a supervisor's meeting that occurred in June and July where Espinoza did discover that he was doing ongoing concerted activity. No, Espinoza. No, we would disagree with that. Mr. Espinoza knew about the lawsuit as the CEO in January. We knew about the lawsuit, but I thought it came up in a July supervisor's meeting that he was still meeting other employees who then signed off. That's wrong. That's not my understanding, Your Honor. And in relation to the talking, we never knew about that. There's no evidence in the record that we knew about it. And then separately, the board makes a general argument, but there's also no legal precedent for this court to rely upon the fact that let's, for example, say I join subsequent to Ramirez filing suit. The fact that I join does not mean that Ramirez benefits for my protected activity. They've tried to make that argument. We don't believe there's any pit circuit or any other case law that supports that position, Your Honor. My second point focuses on Cordue's defense. And I want the court to focus on one issue that the board overreached on, and that's in the record of appeals 1787 and 1825. They specifically said that an employee can join a lawsuit or file a collective action, seek the records of other employees, lie about it and be protected under the act by that. That's not a rule this creates liability, confusion for employers and no protection from data breaches, Your Honor. Last point I want to address briefly is my affirmative defense. I'm sorry, the bar to his damages. The Fifth Circuit in Brookshire says that his perjured and misconduct bars his remedies that he's seeking in this case. In addition to that case law, Your Honor, we believe Brookshire Farm applies in this case because of his misconduct that we discovered after the fact, meaning that we found out that he lied to us as an employee. Because of that, Brookshire Farm says we can forfeit his remedies because we would have fired him if we confirmed that he lied to us in that situation. So, Your Honor, there's two basis is regardless of the outcome of this case where we believe the court can deny his remedies because of a serious misconduct, Your Honor. And with that, um, I'll conclude. Thank you, Mr White. Your words. Good afternoon. May I please the court Eric White's on behalf of the National Labor Relations Board. The only uncontested unfair labor practice that issue in this case is the unlawful discharge of Mr Steven Ramirez in retaliation for his uncontested protected activities and talking to coworkers about wages and a collective wage an hour lawsuit and actually filing said lawsuit. And on review, this court applies a deferential standard of review for the board's findings as to that matter, which were ultimately findings of fact. And there are ultimately two particular findings of significance. First, the board's finding that Mr Ramirez is protected activity was at least a motivating factor for his discharge, which, as explained in our brief in the board's decisions, is supported by both targeted and circumstantial evidence of animus and motivating factor. And secondly, that once the board has made that finding, the burden having shifted to the employer that the employer had failed before the board to affirmatively prove that it would have discharged Mr Ramirez regardless of his activity. So before going into detail on those two points, I just wanted to respond to the opening argument on the question of whether Mr Ramirez lied at the unfair labor practice hearing or his overall credibility. First of all, I just highlight to the court that the standard of review for the board's credibility findings based on in person credibility determinations is extraordinarily lenient, and the court generally will not upset those credibility determinations absent extraordinary circumstances. But I think more importantly, in this case, it's important to emphasize that Mr Ramirez's testimony was actually a very little significance to any of the board's findings. In fact, the only finding of fact by the board that turned on crediting Mr Ramirez's testimony is the board's finding that he never asked Miss Reitman, his manager, for other employees wage information or any other information. The rest of the board's findings I would submit to the court do not, in fact, depend on Mr Ramirez's testimony about what occurred. However, as to that particular finding where the board credited Mr Ramirez denying that he had requested other employees wage information, I point out, first of all, that that's uncontradicted. The employer did not submit testimony from any other manager, including Miss Reitman, that would contradict that. Secondly, the board affirming the administrative law judge specifically noted that it was crediting Mr Ramirez's reluctant admission to that fact. So this is not a case when you say they didn't. I noticed this in the briefs, and I think even in the ALJ order, she drew an adverse inference that they hadn't called Reitman. But I think opposing counsel's brief is correct that on cross examination, they very directly tried to elicit from Reitman and your counsel. I don't know if it was you objected successfully. So it really I don't understand how you can say they didn't elicit the crucial facts from Reitman. They tried to, but you objected. Well, first, your honor, I'd point out that the board did not actually rely on an actual formal adverse inference. But as to that particular point, the law judge did noted in a footnote, right? But the board specifically disclaimed it. And a minute ago, you were emphasizing that they didn't pursue that from Reitman. And my point to you is the one they made in the brief that they tried to, but you objected. Is that yes? Yes. To respond to that, your honor. What happened at the end for a labor practice hearing is that the employer attempted to ambush the board's general counsel with the fact that I've had these text messages, which no one knew prior to that. And what the employer tried to do was to introduce without introducing those into evidence to present them in cross examination to the council for the board's general counsel's case and counsel for the board's general counsel objected and said, if you want to introduce this evidence, you need to call these witnesses as part of your defense case, which the employer ultimately did with Mr Ramirez and could have done with Miss Reitman. But the employer made a deliberate choice not to recall Miss Reitman as part of its own case. So the excerpt of the testimony that the employer quotes in its brief is counsel for the board's general counsel appropriately saying this is not on cross examination for the employer to be asking about these text messages that had not been part of counsel for the general counsel's case. So it was not an attempt to preclude Miss Reitman from testifying. Am I oversimplifying it when I say in large part, their argument for terminating him was that he sought other people's records and then they do have a text from Miss Reitman to that effect. And she said, I wouldn't do it because it's wrong. Um, and had in fact, he done that and then denied it to them. Well, then he would be lying and they wouldn't have a section section eight violation because they wouldn't have been pretextual. They would have been firing somebody who sought to do something that was misconduct, right? Well, your honor, the affirmative defense would still fail actually on three distinct levels. First of all, even setting aside the board's finding that Mr Ramirez did not make this request. Uh, the board also separately found, which is a distinct finding that at the time that he was discharged, the employer did not in fact reasonably believe that he had. And that finding is based on a wealth of evidence, including the scope of the investigation, the fact that they waited six weeks to even confront him with this and all of the information we discussed in our brief. Secondly, even setting aside that finding a fact that they did not have, did not reasonably believe in that it was a pretextual justification, the board found that the mirror requests to his own manager, which I think it's important to emphasize Miss Reichman was who he reported to at a restaurant. And even assuming that he asked his manager, Hey, can you confirm other employees hours as well? She said, No, the only evidence we have from the record, even crediting those text messages is that he dropped the issue. He did not press it or try to surreptitiously acquire the documents and under board law, which the employer does not meaningfully contest other than indicating that it disagrees with the board has found that when an employee makes a request of that manner that's directly connected to protect a concerted activity, simply requesting to a manager is distinct from actually trying to access records surreptitiously. For example, in the Brooks our case where the employee actually broke into a supervisor's office and stole the documents here, there's no such evidence. And third, even assuming even setting aside both of those findings of the board, the board also found that even if he had engaged in this misconduct, the employer simply failed to satisfy its affirmative burden of proof to show that it would have normally discharged an employee who had worked at these restaurants for several years and had no prior disciplinary history for this one infraction of asking an inappropriate or not question to a manager and not receiving any documents, not pressing the issue further. And so the board's finding that the employer had failed to satisfy its affirmative defense is actually three independently sufficient findings. First, on a factual level that Mr Ramirez did not engage in misconduct, either attempting to access records or lying about it. And in addition to that, that the employer did not reasonably believe that he had and that this was not the real reason for its decision to discharge him. Secondly, the alleged misconduct that the employer focuses on is not a legitimate basis for discharging him as a matter of law, because as the board found, this was essentially protected as an extension of his or protected activity. And third, just as a simple matter of an employer's evidentiary burden under the right line framework, the employer has not proven that it would have discharged him absent the board's finding that it harbored at least some animus towards. They put a fair bit of weight on Valmont that pretext alone suffice. If that's a fair characterization of the case, is there any or can any inferences of animus? Were they drawn and can there be drawn from the refusal to let him speak to an attorney and the breaking in of Miss Reichman's phone? Yes, Your Honor, and I just point out that both board law and this court's law are in agreement that pretext alone, uh, since you established animus where the surrounding circumstances do not support the finding of animus. However, in this case, pretext was actually a small part of the board's finding that Mr Ramirez is protected. Activity was a motivating factor. And so to your first question with regard to the conduct of the interview with Mr Esquivel, uh, as the board found, if the court looks at those transcripts of the interview and reads them as a whole, I think substantial evidence supports the board's finding that it does not appear that Mr Espinoza and the interview were designed to actually find out the truth about this alleged misconduct. And in fact, Mr Espinosa was probing beyond that when he knew, as a matter of fact, that Miss Reichman had called Mr Ramirez or at least texted him about the lawsuit and about the possible involvement of her husband and that Mr Ramirez was playing the role of the point person for this protected lawsuit. And Mr Espinoza, nonetheless, prevented him from contacting his attorney, attempted to pressure into him into providing access to his cell phone, went down a list of questions, basically indicating a willingness to just conclude that Mr Ramirez is lying rather than trying to actually find out whether there had been an attempt to access confidential employee records as the employer now claims. Secondly, as to Mr Ambrose's dubious decision to to consult these text messages, responding to a point that the employer makes in its reply brief, and I believe in its opening argument, the question of whether Mr Ambrose saw a text message with his name pop up, and that's why he looked at Mr Ramirez's contacts. Message exchange in particular is sort of irrelevant. First of all, you know, there's not really any evidence supporting that Mr Ambrose's testimony would. I think it would be suspicious that the employer would not have included that text message in the exhibit that it introduced. But even if that were the case, it would still be the fact that Mr Ambrose would have had to have deliberately targeted Miss messages with Stephen Ramirez shortly after Mr Ambrose learned that Mr Ramirez was involved in this lawsuit, and he would at a minimum have had to scroll up to view earlier messages that he admitted he knew had to do with the lawsuit. So based on any construction of the evidence in this case, the board's finding that Ambrose specifically targeted Mr Ramirez to you know, what became this evidence of pretextual misconduct under board precedent and common sense, I would submit, is strong evidence that the employer Harvard Animus specifically talked towards Mr Ramirez as the point person for this lawsuit and that it was singling him out to try to investigate him and find ostensibly some evidence of misconduct or at a very least to what communications he was having about the lawsuit on his personal time using a personal cell phone. If I can move next to the timing issue, first of all, I wanted to point out that the employer makes an argument in its reply brief that the board did not rely on timing. It incorrectly cites Section 10 of the Act, which actually has no bearing on the issue. I interpret the argument as being that board council is now making an argument that doesn't that does not appear in the board's decision and order. That is simply not the case. The board specifically found that a pattern emerged over time that it appeared to the employer that Mr Ramirez, which with each new restaurant he went to, was recruiting more and more employees to this growing collective action that it was concerned about. And specifically, I'd point the court to record on appeal page site 18 42, where the board specifically says regarding timing, uh, employees continue to join this lawsuit right up until three days before this interview about misconduct that had allegedly occurred two months earlier and shortly after which Mr Ramirez was discharged under board precedent. And, you know, the basic point of circumstantial evidence, the fact that employees continue to join the lawsuit and that there were developments in the lawsuit is of great significance and establishes a timing link. The fact that Mr Ramirez's first instance of protected activity had occurred eight months earlier does not undermine the fact that the protected activity was still going on at the time of the discharge. I'd point the court to just as an example, this court's decision in the Brookwood case, which we cite in our brief there, the court found that a four month gap in time supported an inference of animus where an election had occurred four months earlier, but objections to the action were still going on. And so the course of conduct was still active, and it's still reasonable to infer that the employer's concern over that contributed to his decision to discharge an employee. I'd also point out that I believe in the opening argument, the employer has now taken the position for the first time that the employer lacked knowledge of Mr Ramirez's continuing activity and speaking to co workers. That argument does not appear in their opening brief or reply brief. So we would submit that that has been effectively waived and is not properly before the court. However, there is evidence that at least in July, from testimony of the employer's own manager, that Mr Ambrose spoke to other employees who discussed with him the fact that Mr Ramirez was involved in the lawsuit. In addition, I would submit that it's reasonable to infer that when you have all this evidence of an individual who is spearheading this collective wage inaction and employees continue to join exclusively at the restaurants where he works or has recently worked, where he is, as the board found, essentially spreading the lawsuit to more and more employees, it's reasonable to infer that the employer would have known when more employees continue to join the lawsuit that Mr Ramirez was still speaking to them. There's also the very fact of the text message exchange that the employer is largely basing its case on, which makes clear that Miss Reitman, on behalf of herself and her husband, who was a non supervisory employee, were continuing to go at least through July to Mr Ramirez as a point person. And he discussed the lawsuit with co workers and, in fact, directed them to his attorney, who was the attorney handling the lawsuit. So I would submit that that argument is waived, but it's also simply not the case that substantial evidence doesn't support the board's finding that the employer had knowledge of this continuing protected concerted activity. I'd also point out that the board relied, in addition to finding animus on the scope of Mr Espinoza's interview and the fact that it was not designed to find the truth, but in fact was seemingly designed to probe Mr Ramirez about the lawsuit. I don't believe the employer has really responded to that in its reply brief. I'd also point out the significant circumstantial evidence of animus that the employer is making a big deal that it allegedly thinks that Mr Ramirez tried to access confidential employee information in early to mid July, and yet the employer took no action whatsoever for six weeks, which does not support the narrative that the employer is trying to present to the court. And in fact supports the board's finding that the employer was not in fact concerned about this. It concluded fairly quickly that more likely than not, no records had been taken. And the inexplicable gap in time merely suggests that when the employer reached a breaking point where more and more employees continue to join the lawsuit, that it decided this pretextual claim of misconduct from two months earlier, it was going to be the basis for it getting rid of employee that was causing trouble in his restaurants. This matter went to the board twice, correct? With an overlap of three or four? Three or four. Board members? Yes, there was an initial board decision, Your Honor, which was vacated for reasons not really touching on this unfair labor practice due to intervening Supreme Court precedent. So it was vacated and went back to the board. And the decision in order that specifically before the review was a full board decision and the board unanimously found both of the unfair labor practice. As to this individual, they did cross-incorporate the earlier unanimous board ruling, correct? Correct, yes. Specifically in a footnote, they incorporated specific portions, effectively all of the board's relevant analysis, as well as the administrative law judge's conclusions to find. Just a little time you have left. Could you elucidate for me what the present pending motion for supplemental materials, from your standpoint, what is it relevant to and what's the concern? Yes, Your Honor. The board would submit that the motion is of very little relevance, in fact. The employer is now wanted to introduce to the court the briefs in support of the board and the unfair labor practice proceeding. What's the harm with accepting that if it was a document filed in that proceeding? Well, certainly the board is not attempting to prevent the court from seeing it. However, the board has a long-term institutional position going back at least 50 years or longer that when parties file an exceptions document and a separate brief in support of exceptions, that as a matter of the formal administrative record, the brief in support of exceptions is not formally part of the record. And there's a number of reasons for that, one of which is that parties are, in fact, required to raise any reviewable arguments in the exceptions document. Secondly, the board has particular procedural limitations. For example, there's a page limitation on the exceptions document or a combined document. And so anecdotally, I have had cases where employers have filed a brief in support of exceptions that are several hundred pages long, whereas normally the actual exceptions themselves are limited to 50 pages. And so that is not formally part of the record, as I believe this court recognized even as long ago as the 1960s in the A.H. Bellow case. However, I just emphasize to the court that the board is attempting to prevent the court from seeing these. We would submit that they don't really have any relevance to this case. As to the employer's brief in support of exceptions, we did make one 10E argument in our answering brief that the employer is now making an argument that was not raised to the board, and so that is jurisdictionally barred. That's specifically the argument that as of the date of the unfair labor practice hearing, Mr. Ramirez's back pay should be cut off. However, that argument— I'm sorry, Your Honor? You exceeded your time. I'm just saying bring your answer to a close. Oh, I'm sorry, Your Honor. Just to conclude very quickly, so we would submit that the brief in support of exceptions does not change that argument because they did not—as for the brief in support of the general counsel's exceptions, we would submit that that has no relevance whatsoever because that does not We do not oppose those documents being lodged with the court, and if there's no further questions, we would ask for full enforcement. Thank you. Thank you, Mr. Rice. Mr. Ramirez, you have five minutes on rebuttal. Thank you, Your Honor. May it please the court. One point on the animus and pretext is that pursuant to the Fifth Circuit case law, the board can't use evidence to support both animus and both as animus and pretext, and we object to that. In addition to this investigation, Your Honor, we want to put things in context. You know, the board wants to have it both ways. Our HR director was out of pocket when this issue arose. It was restaurant week in Houston, Texas, which is a very busy month for all restauranteurs in addition to December. Your Honor, we have the CEO trying to manage an entire restaurant in restaurants in addition to this two weeks, and then ultimately we interviewed him on two occasions. If we would have had a shortcut investigation, it would have been animus. If we would have suspended him, like the board argues in their brief, it would have been animus. So it's a catch-22 situation. Was Mr. Espinosa walking carefully because he's handling an allegation that he stole employee records? Most definitely, and an employer or any employer for that context should not be penalized. You know, Ramirez's request for records was surreptitious. He requested those records without the consent of those employees. We've heard the board say that it's protected activity. Whether or not he was asking for his own records is really a red herring. What the issue is is that he sought the records of other employees without their consent, and when he was questioned about it twice, he lied about it. Additionally, the board has held that Ramirez was entitled to lie to shield his supposed protected activity of attempting to obtain other employees' payroll records. That's not a rule this court wants to adopt. The conduct is not protected. It contradicts the board's reasoning in relation to his request because it was not protected and it was surreptitious. Your Honor, just on an issue about whether or not Mr. Ramirez had a right to an attorney, that's legal precedent relating to union representation issues, which isn't present here. This is a simple at-will investigation of a company into misconduct. You know, unions were not present and no attorney was necessary in this situation. Note that the board correctly states that the ALJ's credibility determination should be upheld absent extraordinary circumstances. Your Honor, perjury is an extraordinary circumstance. If any employee asked to get the employee records of co-workers without their consent, for whatever reason he was going to use it, that's also extraordinary circumstances. Data breaches in today's world, there's too much liability at stake and that's not a rule this court should implement. Your Honor, in relation to the Brookshire case that we both talked about, that four-month gap is incorrect because in the Brookshire case, the court looked at a new act of protected activity that didn't exist in this case, meaning what happened there was the employee initially engaged in protected activity and then stepped out of that box and engaged in subsequent different protected activity by filing an employee safety complaint. Here, all we have is simply someone engaging in protected activity by filing a lawsuit in January and then getting terminated eight months later. We still stand by the fact that that's an eight-month gap that does not create an inference of animus, Your Honor. Other points here before my time is up. The fact the board only wants to allow us to have any reason to terminate if Ramirez was successful in his attempt to steal those records, that's really a moot point. Cordua did not see any difference between theft and attempted theft. Any employer put in that situation would have terminated Ramirez, period. And going back to whether we even set forth our firm defense burden, we most definitely did by presenting evidence that we terminated other employees for minor instances or other instances of theft, such as stealing beer or alcohol, and for terminating another employee for lying to a manager. The board is holding us up to a very high and where those that are similar to Ramirez's conduct. If we don't disturb the fact finding that he didn't try to steal other people's records, what misconduct of his would you point to other than his answers to Espinosa's questions? Other than his answers to Espinosa's questions? Well, he was trying to sabotage our investigation by not giving the truth to us when we were investigating that issue. And coupled with the fact lying to a manager is a violation of our policy, trying to steal is a violation of our company policy and the like. Okay. Thank you. And your honor, I know the board had at least a minute or so to talk about the motion we recently filed in relation to the record on the appeal. Did you want to hear any argument on my side? I think you've exceeded your time. Okay. Thank you, your honors.